IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

THOMAS MOLINA,

      Plaintiff,

v.                                        Civ. No. 12-424 GBW/WDS

NATHANIEL BLANTON and
CHRISTOPHER GALLEGOS,

      Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants' Motion for Summary

Judgment and Qualified Immunity, *doc. 29*.  Having reviewed the briefing, *docs. 34, 37*,

the Court finds the motion well-taken and grants it.

## I.  BACKGROUND

On April 21, 2010, Plaintiff Thomas Molina was arrested for Driving While

Under the Influence.  *Doc. 29* at 6 ¶ 1 & ex. A; *Doc. 34* at 4 ¶ 1.  He was booked and

taken to the Valencia County Detention Center (VCDC).  *Doc. 1* ¶ 5; *Doc. 29* at 6 ¶ 4 &

ex. C at 1.  Plaintiff alleges that he suffers from "a mental illness requiring prescription

medication."  *Doc. 1* ¶ 2.  At VCDC, he was informed that his medication was "not in"

and that he would therefore not receive it.  *Doc. 29*, ex. C at 2; *Doc. 1* ¶ 7.  In response,

Plaintiff used "colorful language" and threatened to file a lawsuit against VCDC.  *Doc.

34* at 5 ¶ 12; *Doc. 29*, ex. C at 2.  Defendants handcuffed Plaintiff and began to lead him

to segregation.  *Doc. 1* ¶¶ 11, 13; *Doc. 34*, ex. 1.  As Plaintiff and Defendants approached the door to segregation, an altercation ensued in which Plaintiff was pushed up against the door by Defendants and then taken to the floor.  *Doc. 1* ¶ 16; *Doc. 34*, ex. 1.  This incident was recorded by the hallway surveillance camera.  *See doc. 34*, ex. 1.

Plaintiff originally filed this lawsuit in state court; Defendants removed it to this Court on April 23, 2012.  Plaintiff's complaint contains four counts, three of which arise under 42 U.S.C. § 1983 and one of which presents a state law claim.  The claims are as follows: (1) a Fourth and Fourteenth Amendment claim, alleging that Defendants used excessive force when they pushed Plaintiff against the wall and onto the floor;[1] (2) a Fourteenth Amendment due process claim, alleging that Defendants were deliberately indifferent to Plaintiff's medical needs; (3) a First Amendment claim, alleging that Defendants retaliated against Plaintiff for complaining about his lack of medication by sending him to segregation and pushing him against the wall and onto the floor; and (4) a battery claim under the New Mexico State Tort Claims Act.  *Doc. 1* ¶¶ 25-57.  Defendants filed the instant motion for summary judgment on November 6, 2012.  *See doc. 29*.

II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary

---

[1] Although Plaintiff refers to both the Fourth and Fourteenth Amendments in his Complaint, *doc. 1* ¶¶ 26-27, the parties now agree that Plaintiff's excessive force claim properly arises under the Fourteenth Amendment because Plaintiff was a pretrial detainee at the time of the incident.  *Doc. 34* at 11; *Doc. 37* at 7.  Plaintiff's Fourth Amendment claim is therefore dismissed.

judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case.  *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.  An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."  *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ."  Fed. R. Civ. P. 56(c)(1)(A).  All material facts set forth in the motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  *See Liberty Lobby*, 477 U.S. at 249.  Second, the court must resolve all reasonable inferences

and doubts in favor of the non-moving party, and construe all evidence in the light

most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55

(1999). However, if the non-moving party's story "is blatantly contradicted by the

record, so that no reasonable jury could believe it, a court should not adopt that version

of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*,

550 U.S. 372, 380 (2007). Third, the court cannot decide any issues of credibility. *See*

*Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only

present evidence from which a jury might return a verdict in his favor." *Id*. at 257.

## III.   UNDISPUTED FACTS[2]

1.   Plaintiff was arrested for Driving While Under the Influence (DWI) on April 21,

     2010, at approximately 12:30 a.m. *Doc. 29* at 6 ¶ 1 & ex. A; *Doc. 34* at 4 ¶ 1.

2.   At approximately 2:16 a.m. on April 21, 2010, Plaintiff arrived at the Valencia

     County Detention Center (VCDC). *Doc. 29* at 6 ¶ 4 & ex. C at 1; *Doc. 34* at 4 ¶ 4.

3.   Plaintiff was taken before Magistrate Judge Gallegos for a probable cause

     determination and arraignment on April 21, 2010. *Doc. 29* at 6 ¶ 5 & ex. D; *Doc.*

     *34* at 4 ¶ 5. Magistrate Judge Gallegos set Plaintiff's bail at $2,500.00. *Doc. 29* at 6

     ¶ 6 & ex. D at 1; *Doc. 34* at 4 ¶ 6.

---

[2] All material facts not specifically controverted by the opposing party are deemed undisputed. *See*
D.N.M.L.R.-Civ. 56.1(b); Fed. R. Civ. P. 56(e)(2).

4. Plaintiff was a pretrial detainee at the time of the events at issue in this case

   because he had been previously arraigned.  *Doc. 29* at 6 ¶ 8 & ex. D; *Doc. 34* at 5 ¶

   8.

5. At approximately 9:05 p.m. on April 21, 2010, Sergeant Mara Ordonez informed

   Plaintiff that his medication was unavailable.  *Doc. 29* at 6 ¶ 9 & ex. C at 2; *Doc. 34*

   at 5 ¶ 9.

6. At no time on April 21, 2010, did VCDC officers give Plaintiff his medication.

   *Doc. 34* at 2 ¶ 2; *Doc. 29*, ex. C at 2.

7. During his detention, Plaintiff threatened to sue VCDC and Defendants for not

   giving him his medication.  *Doc. 29* at 7 ¶ 11 & exs. C, E, F; *Doc. 34* at 5 ¶¶ 10-12.

8. Defendant Correctional Officers Nathaniel Blanton and Christopher Gallegos

   were aware of Plaintiff's general threats to sue them because of the medical care

   provided by VCDC.  *Doc. 29* at 7 ¶ 11 & exs. E at 1, F at 1; *Doc. 34* at 5 ¶ 11.

9. Also during his detention and before the altercation, Plaintiff made the following

   statements:

   a.  "You're a pussy I'm going to sue the fuck out of you guys for not giving

       me my medications."  *Doc. 29* at 7 ¶¶12-13 & ex. G; *Doc. 34* at 5 ¶¶ 12.-13.

   b.  "Fuck all you C/O's, you guys are a bunch of pussies, you will be

       working at Allsup's when I am done, I want to sue this place so give me a

       reason."  *Doc. 29* at 7 ¶ 14 & ex. G; *Doc. 34* at 5 ¶ 14.

10. At approximately 9:15 p.m. on April 21, 2010, Defendants began moving Plaintiff to segregation.  *Doc. 29* at 6 ¶ 7 & ex. C at 2; *Doc. 34* at 4 ¶ 7.

11. Defendant Blanton walked Plaintiff from medical to B-pod to the hallway leading to segregation without the use of handcuffs.  *Doc. 34* at 3 ¶ 7.  During that time, Plaintiff did not hit, kick, or attempt to strike anyone.  *Doc. 34* at 3 ¶ 8.

12. In the hallway, Defendants ordered Plaintiff to face the wall so that they could handcuff him.  *Doc. 34* at 3 ¶ 9.  Plaintiff faced the wall and Defendants handcuffed him.  *Doc. 34* at 3 ¶ 10 & ex. 1.

13. Defendants began to walk Plaintiff to the door leading to segregation.  *Doc. 34* at 3 ¶ 13 & ex. 1.

14. An altercation occurred between Defendants and Plaintiff during which Plaintiff was pushed against the hallway wall and/or door and onto the floor ("the altercation").  *Doc. 29* at 8 ¶ 22 & exs. C, E, F; *Doc. 34* at 6 ¶ 22 & ex. 1.

15. Defendants did not use hand-held weapons (e.g., guns, knives, or batons) during the altercation.  *Doc. 29* at 8 ¶ 28; *Doc. 34* at 7 ¶ 28 & ex. 1.

16. At some point during the altercation, Plaintiff grabbed the genitalia of Defendant Blanton.  *Doc. 29* at 8 ¶ 25; *Doc. 34* at 7 ¶ 25; *Doc. 29*, exs. E, F.

17. After Plaintiff had released Defendant Blanton's genitalia and calmed down, he was lifted from the floor by Defendants and escorted to segregation without further issue.  *Doc. 29* at 8 ¶ 27 & exs. C at 2, H; *Doc. 34* at 7 ¶ 27.

18. Plaintiff was examined by VCDC medical staff on April 21, 2010, at 9:20 p.m. *Doc. 29* at 8 ¶ 30 & ex. M; *Doc. 34* at 7 ¶ 30.

19. The injuries noted during that examination were scrapes on Plaintiff's chin and knee, and that the lower part of his right eye and the back of his head were red. *Doc. 29* at 8 ¶ 31 & ex. M; *Doc. 34* at 7 ¶ 31.

20. Photographs were taken of Plaintiff's injuries. *Doc. 29* at 8 ¶ 32 & ex. N; *Doc. 34* at 7 ¶ 32.

21. The examining nurse concluded that "inmate was fine returned back to pod." *Doc. 29* at 8 ¶ 33 & ex. M; *Doc. 34* at 7 ¶ 33.

22. Plaintiff was taken to segregation. *Doc. 34* at 2 ¶ 6; *Doc. 29*, exs. C, E, F.

23. Plaintiff later pled guilty to assault and battery arising out of the grabbing of Defendant Blanton's genitalia. *Doc. 29* at 8 ¶ 26 & exs. K, O; *Doc. 34* at 7 ¶ 26.

## IV.   ANALYSIS

Plaintiff argues that Defendants violated his constitutional rights by using excessive force, being deliberately indifferent to his medical needs, and retaliating against him for exercising his right to free speech. Defendants contend that they have qualified immunity because Plaintiff has failed to set forth facts indicative of the alleged violations. For the reasons below, the Court agrees with Defendants and finds that they are entitled to qualified immunity from Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

7

## A.  **Evidentiary objections**

Plaintiff objects to four of the exhibits attached to Defendants' motion on evidentiary grounds.  The Court overrules these objections and will consider the exhibits.  Although the Court may only consider admissible evidence when reviewing a motion for summary judgment, evidence presented on summary judgment can be in a form inadmissible at trial so long as its substance would be admissible at trial.[3] *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010); *see also* Fed. R. Civ. P. 56(c).  Conversely, "although evidence presented in the form of an affidavit at summary judgment can be 'converted' in form into live testimony at trial, the content or substance of the affidavit must be otherwise admissible, and any hearsay contained in a summary judgment affidavit remains hearsay, beyond the bounds of the court's consideration." *Johnson*, 594 F.3d at 1210.

The four exhibits to which Plaintiff objects are (1) Officer Blea's probable cause affidavit in support of the DWI criminal complaint against Plaintiff, *doc. 29*, ex. B; (2) Defendant Blanton's Use of Force Report,[4] *doc. 29*, ex. H; (3) Sergeant Ordonez's Incident Report, *doc. 29*, ex. C; and (4) Sergeant Ordonez's Employee Witness Statement,

---

[3] To be considered when ruling on a motion for summary judgment, materials must fall within the universe of items described in Federal Rule of Civil Procedure 56(c)(1).  If the item is an affidavit or declaration, it must meet the requirements of Rule 56(c)(4).  Plaintiff does not contend that any of the materials suffer from any "technical" deficiency under Rule 56.  Consequently, beyond the specific evidentiary objections raised, Plaintiff waives any other evidentiary objection or any objection based on the technical requirements of Rule 56.  *See Ortiz v. Wingard*, 173 F. Supp. 2d 1155, 1163 (D.N.M. 2001).
[4] Plaintiff states that he "disputes this fact as it is *admissible*." *Doc. 34* at 6 ¶ 17 (emphasis added).  Defendants treated this as a typo and assumed Plaintiff meant "inadmissible." *See doc. 37* at 4.  The Court will do the same.

*doc. 29*, ex. J.  Plaintiff objects to Officer's Blea's affidavit as irrelevant and to all four

exhibits on hearsay grounds.  *See doc. 34* at 4 ¶¶ 2-3 & 6-7 ¶¶ 17, 23-24.  The affidavit

describes Plaintiff as "very agitated" while en route to the police station for booking

and says that Plaintiff insulted and threatened Officer Blea and other officers using

vulgar language.  *Doc. 29*, ex. B at 4.  The affidavit is relevant in that it makes it more

likely that Plaintiff was belligerent at VCDC.  *See* Fed. R. Evid. 402.  As to the hearsay

objections, all four exhibits involve reports of firsthand observations, which are

typically admissible at trial in the form of live testimony. *Walker v. City of Oklahoma City*,

203 F.3d 837, at *8 (10th Cir. 2000) (citing with approval *United States v. Pazsint*, 703 F.2d

420, 424 (9th Cir.1983)) ("It is well established that entries in a police report which result

from the officer's own observations and knowledge may be admitted.").  Plaintiff's

evidentiary objections are therefore overruled.

### B.  Defendants have qualified immunity from Plaintiff's federal claims

#### 1.  Qualified immunity standard

Qualified immunity protects public officials from liability "insofar as their

conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "When a defendant asserts

qualified immunity at the summary judgment stage, the burden shifts to the plaintiff

who must clear two hurdles to defeat the defendant's motion.  The plaintiff must

demonstrate, on the facts alleged, that (1) the defendant violated a constitutional right, and (2) the right was clearly established at the time of the alleged unlawful activity." *Lundstrom v. Romero*, 616 F.3d 1108, 1118 (10th Cir. 2010) (citations omitted).

### 2.   Count I – Excessive Use of Force

Plaintiff's first count alleges that Defendants violated his due process rights under the Fourteenth Amendment during the altercation by "slam[ing] Plaintiff's face into a wall" and "thr[owing] Plaintiff to the floor" "without legal justification."  *Doc. 1* ¶¶ 28-29.  Excessive force claims by pretrial detainees are analyzed in light of three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor."  *Porro v. Barnes*, 624 F.3d 1322, 1326 (10th Cir. 2010) (quoting *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir.2003)).  The Fourteenth Amendment is intended to redress "[f]orce inspired by malice or by unwise, excessive zeal amounting to an abuse of official power that shocks the conscience."  *Id*.  In this case, the evidence, even when viewed in the light most favorable to Plaintiff, does not demonstrate a Fourteenth Amendment violation.

The Court notes at the outset that the entire incident at issue here was captured on video. *See doc. 34* Ex. 1.  When video evidence contradicts a party's description of events, the Court need not defer to that description.  *Scott*, 550 U.S. at 380.  The Court is therefore entitled to rely on the video itself rather than Plaintiff's version of these

events.  *Cf. Thomas v. Durastanti*, 607 F.3d 655, 659 (10th Cir. 2010) (finding court should continue to view evidence in light most favorable to Plaintiff when video recording does not capture all events at issue).

The video clearly demonstrates that Plaintiff's version of events overstates key facts.  Plaintiff argues that he did not "resist, attack or strike" Defendants and that Defendants' conduct was provoked only by Plaintiff's threats to sue Defendants and VCDC.  *Doc. 34* at 14.  He claims that Defendants "pull[ed] [him] back away from the door to gain momentum and smash[ed] his head and face into the metal door" and then "threw [him] to the floor and jumped on top of him."  *Doc. 34* at 4, 14.  The video, however, depicts Plaintiff resisting Defendant Gallegos' attempts to turn him forward to face the door to segregation.  *Doc. 34*, ex. 1 at 21:09:15-21.  Defendants then pushed Plaintiff's chest, not his head, into the door.  *Id*. at 21:09:15-25.  They next turned him away from the door and pushed Plaintiff to the ground, with Defendant Blanton on top of Plaintiff.  *Id*. at 21:09:26-30.

The question is not whether the force used by Defendants was the most suitable option in these circumstances.  Instead, the factfinder must consider whether it was a "grossly disproportionate" response to Plaintiff's conduct. *See Latta v. Keryte*, 118 F.3d 693, 702 (10th Cir. 1997).  "[O]fficials confronted with a prison disturbance must balance the threat [it] imposes . . . against the harm inmates may suffer if guards use force. . . . [C]orrectional officials must make their decisions in haste, under pressure, and

frequently without the luxury of a second chance." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Thus, the use of force in a prison setting may be reasonable when "applied in a good faith effort to maintain or restore discipline." *Id.*

First, based on the video, the amount of force used by Defendants was not "grossly disproportionate" to the need presented. Given Plaintiff's resistance, Defendants used reasonable force to maintain control of the situation. They did not hit or kick Plaintiff or use a weapon against him.[5] Nor did they "throw" Plaintiff to the floor, as the Court understands that term. Rather, while holding Plaintiff by the shoulder and back, they turned him away from the door and pushed him to the floor. Their conduct was more consistent with an attempt to restrain and control Plaintiff than an attempt to attack him. *See Niemyjski v. City of Albuquerque*, 379 F. Supp. 2d 1221, 1231-32 (D.N.M. 2005) (finding use of force to position plaintiff for photographing in booking and to put plaintiff in a cell reasonable given plaintiff's physical resistance and verbal insults); *Roland v. Galloway*, 1998 WL 259896, at *3 (D. Kan. 1998) (finding use of electric shock to discipline plaintiff reasonable in light of plaintiff's combative behavior and noncompliance with officers' orders). Moreover, Plaintiff himself prolonged the altercation and the length of time that Defendant Blanton was on top of him by grabbing and holding onto Defendant Blanton's genitalia. *See* Undisputed Fact 17, *supra*; *doc. 29*, ex. K at 2 (estimating that Plaintiff held onto Defendant Blanton's

---

[5] The Court acknowledges that Plaintiff regards the wall and the floor as weapons. *Doc. 34* at 7 ¶ 28. The Court, however, uses the term to refer to handheld weapons such as guns, knives, batons, and Tasers.

genitalia for 15 seconds).  While Defendants may have applied more force than absolutely necessary to handle the situation, their use of force was by no means the sort of unjustifiable, conscience-shocking conduct meant to be redressed by the Fourteenth Amendment.

Second, the injuries inflicted on Plaintiff by Defendants' use of force were minor. According to the notes of the nurse who treated Plaintiff immediately after the incident, Plaintiff had "a scrape on chin, lower part of [right] eye is red, scrape on [right] knee, [and] back of head red."  *Doc. 29*, ex. M.  The nurse concluded that "inmate was fine" and "returned [him] back to pod."  *Id*.  Plaintiff offers no evidence to support his contention that Plaintiff was "bleeding from open wounds" or that the injuries were not "inconsequential."  *Doc. 34* at 15.  The color photographs attached to Plaintiff's response, upon which Plaintiff relies to prove his injuries, show only red marks and possibly scrapes and bruises, not "open wounds."  *Doc. 34*, ex. 2.  Plaintiff does not allege, or provide evidence of, any long-term damage, pain, or suffering as a result of his injuries.  He does not suggest that the scrapes and spots were symptoms of some greater injury.  In order to overcome a summary judgment motion, the non-movant must "go beyond the pleadings and set forth specific facts . . . identified by reference to [evidence]."  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Because Plaintiff has failed to do that, the Court concludes that Plaintiff's injuries were limited to the minor scrapes and red spots described by the nurse who treated Plaintiff.

*Cf. Tate v. Fish*, 347 F. Supp. 2d 1049, 1057 (D.N.M. 2004) (finding plaintiff suffered serious injury that supported excessive force finding when his elbow required draining and he sustained lasting damage to his vision).

Third, Plaintiff has offered insufficient evidence to support the conclusion that Defendants acted on improper motives.  Plaintiff suggests that Defendants were motivated by Plaintiff's threats to sue them: "Given that Mr. Molina is not seen on the video attacking the Defendants and their admissions that just prior to the incident Mr. Molina was threatening to sue them, a reasonable inference can be drawn connecting the two." *Doc. 34* at 15-16.  Although this Court must draw all inferences in favor of Plaintiff, those inferences must be supported by evidence; pleadings alone are insufficient to create a genuine dispute of fact.  *Adler,* 144 F.3d at 670-71.  Evidence that is "merely colorable" or "not significantly probative" is insufficient to overcome summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Plaintiff's key premise for his inference is that he did nothing, beyond his earlier threats of a lawsuit, that could justify Defendants' subdual of him.  However, the premise fails because the video shows Plaintiff resisting Defendant Gallegos' attempts to turn him forward to face the door to segregation.  *Doc. 34*, ex. 1 at 21:09:15-21.  Given that this resistance appears to be the immediate cause of the subsequent altercation, it is not reasonable to infer that the officers were instead motivated by earlier threats of a lawsuit over medication.  In these circumstances, Plaintiff's sole argument for improper

14

motive – that Defendants were angered by Plaintiff's threats of a lawsuit – is more akin to speculation than a reasonable inference.

Taking these three factors together—the amount of force used, injuries sustained, and motives of Defendants—no reasonable trier of fact could find that Defendants used excessive force in violation of the Fourteenth Amendment.  In *Roska ex rel. Roska v. Peterson*, the Tenth Circuit held that social workers who pushed adolescent girls against the wall of their home while removing their brother to foster care did not use excessive force in violation of the Fourteenth Amendment because the force used was reasonable, no serious injuries were inflicted, and there was no evidence in the record of malice or improper motive.  328 F.3d at 1238, 1242-44.  This case involves comparable facts but arises in the prison context, where correctional officers have significantly more leeway to use force to maintain discipline.  *See Hudson*, 503 U.S. at 6.   If pushing adolescent girls against the wall in their own home is insufficient to state a Fourteenth Amendment violation in the absence of any serious injury or improper motive, so is pushing Plaintiff while he is in custody and visibly resisting the commands of correctional officers. Because Plaintiff has not demonstrated that Defendants used excessive force against him in violation of the Fourteenth Amendment, Defendants are entitled to qualified immunity on Count I.

### 3.   Count II – Deliberate indifference to Plaintiff's medical needs

In Count II, Plaintiff alleges that Defendants "acted with deliberate indifference to Plaintiff's medical care" by "fail[ing] to provide Plaintiff his prescribed mental health medications." *Doc. 1* ¶¶ 38, 42.  He claims that the altercation between himself and Defendants was motivated by a desire to punish Plaintiff for complaining about the lack of medication.  *Id*. ¶¶ 39-41.  "[P]retrial detainees are entitled under the fourteenth amendment's due process clause to the same degree of protection regarding medical attention afforded convicted inmates under the eighth amendment."  *Martin v. Bd. of County Comm'rs of County of Pueblo*, 909 F.2d 402, 406 (10th Cir. 1990).  Thus, in order to state a claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to his serious medical needs.  *See id*. (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).  The deliberate indifference test has both an objective and subjective prong.  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).  First, the deprivation at issue must have been sufficiently serious.  *Id*.  A "medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Id*. (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).  Second, the defendant must have known of the need and nevertheless disregarded an excessive risk to the inmate's health or safety.  *Id*.  An inmate "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted

or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 752

(quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).  If a risk is so obvious that a

reasonable person would recognize it, a factfinder may infer that the defendant

recognized it.  *Id*.

Plaintiff has presented no evidence indicating that his medical need was serious

or that Defendants ignored clear health or safety risks.  As to the objective prong of the

deliberate indifference test, Plaintiff argues that he "was booked into jail with a valid

prescription and medication for seizures" and that seizures are a per se serious medical

need.  *Doc. 34* at 16.  In support of this contention, Plaintiff cites only Officer Blea's DWI

probable cause affidavit.  *Id*.  That affidavit states that Plaintiff had a bottle of

Clonazepam in his car when he was pulled over by Officer Blea.  *Doc. 29*, ex. B at 2.  It

says nothing about the condition for which the drug was prescribed.  Plaintiff has

offered no evidence indicating that he had been diagnosed with epilepsy or any other

illness or disability, mental or otherwise, at the time of his arrest.  Nor has he alleged, or

presented evidence indicating, that his medical need was so obvious that a layperson

would recognize it.  There is no allegation that Plaintiff suffered a seizure or other

visible medical episode or symptoms of distress during his arrest or at VCDC.  The

report of the nurse who treated Plaintiff after the alleged excessive force incident notes

only scrapes and red spots; it does not refer to any more serious medical condition.

Plaintiff has therefore failed to demonstrate that he suffered from a serious medical

condition while at VCDC.  *See Frohmader v. Wayne*, 958 F.2d 1024, 1028-29 (10th Cir.

1992) (finding summary judgment appropriate on deliberate indifference claim where

plaintiff presented no medical evidence to support his alleged diagnosis of

claustrophobia); *Gee v. Pacheco*, 627 F.3d 1179, 1192 (10th Cir. 2010) (finding prisoner

failed to state a deliberate indifference claim when he provided no medical support for

the existence of the disorders he allegedly suffered from).

Plaintiff also fails to demonstrate that Defendants knew about his medical

condition and disregarded risks to his health.   To prove knowledge of his medical

needs, Plaintiff argues that Defendant Blanton overheard Sergeant Ordonez inform

Plaintiff that his medication was not available and that both Defendants Blanton and

Gallegos heard Plaintiff's threat to sue VCDC if he did not receive his medication.  *Doc.*

*34* at 16.  These facts indicate at most that Defendants were aware that Plaintiff took an

unidentified medication and that he was not provided that medication at VCDC.  As

noted above, there is no evidence that Plaintiff suffered a medical episode that would

have alerted Defendants to the severity of any existing medical condition and the risks

of leaving that condition untreated.  There is also no evidence—nor does Plaintiff

contend—that he informed Defendants of his particular medical needs.  For their part,

Defendants attest that they did not know from what medical condition Plaintiff suffered

or what medication he took.  *See doc. 29*, ex. E.  Without knowledge of Plaintiff's specific

medical needs, Defendants could not have been deliberately indifferent to the risk of

leaving those needs untreated.  Moreover, to the extent that there is any evidence in the record indicating that Defendants knew of any need for Plaintiff to receive medical attention, it demonstrates that they were not indifferent to such a need.  After the altercation between Plaintiff and Defendants, Plaintiff was immediately taken to a VCDC nurse.  *See doc. 29*, ex. M (indicating nurse treated Plaintiff at 9:20 p.m., about ten minutes after the alleged excessive force incident occurred).

Under this record, a reasonable trier of fact could not find that Defendants were deliberately indifferent to Plaintiff's medical needs in violation of the Fourteenth Amendment.  Defendants are therefore entitled to qualified immunity from Count II.

### 4.  Count III – First Amendment Violation

In Count III of his Complaint, Plaintiff alleges that Defendants violated his First Amendment right to free speech by retaliating against him when he requested medical care and complained about the lack thereof.  *Doc. 1* ¶¶ 45-52.  The retaliation allegedly took the form of sending Plaintiff to segregation and pushing him into the hallway wall and onto the floor, as described above.  *Id*. ¶¶ 49-50.  To state a retaliation claim under the First Amendment, Plaintiff must prove that (1) he was engaged in a constitutionally protected activity; (2) Defendants actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants' actions were "substantially motivated" as a response to Plaintiff's

constitutionally protected conduct. *Worrell v. Henry*, 219 F.3d 1197, 1211 (10th Cir. 2000).

Although prisoners retain First Amendment rights, those rights "may be restricted in ways that 'would raise grave First Amendment concerns outside the prison context.'" *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, a prisoner "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (quoting *Smith v. Maschner*, 899 F.2d 940, 949-50 (10th Cir. 1990)).

The Tenth Circuit has not directly addressed whether, in prisons, disrespectful, threatening language is protected speech. *See Roberts v. Jones*, 2012 WL 1072218, at *2 (W.D. Okla. Feb. 29, 2012) (finding that the Supreme Court and Tenth Circuit have never held that such language is constitutionally protected in prisons); *Strope v. Haydon*, 2012 WL 415455, at *7-*8 (D. Kan. Feb. 9, 2012) (noting that the court could not find a Tenth Circuit case on this issue). However, the circuits that have addressed this issue have held that such language, when directed at correctional officers, is not constitutionally protected because prison officials have a legitimate penological interest in maintaining order and discipline. *See, e.g., Huff v. Mahon*, 312 F. App'x 530, 532 (4th

20

Cir. 2009) (per curiam) (finding inmate did not have constitutional right to call wardens "cold, callous, cruel, evil, uncaring, unmerciful, inhumane" in letter complaining about prison policy requiring sick inmates to wait outside in cold weather to receive medication); *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 864 (5th Cir. 2004) (finding that inmate did not have constitutional right to circulate a statement criticizing prison chaplain because, while inmates retain the right to criticize prison officials, they must do so "in a manner consistent with [their] status as a prisoner"); *Lockett v. Suardini*, 526 F.3d 866, 874 (6th Cir. 2008) (holding that calling a hearing officer a "foul and corrupted bitch" is not protected speech); *Hale v. Scott*, 371 F.3d 917, 919 (7th Cir. 2004) (finding inmate did not have constitutional right to accuse correctional officer of "screwing a lot of the Officer's on the midnight shift" in his grievance); *Leonard v. Nix*, 55 F.3d 370, 375 (8th Cir. 1995) (finding prisoner had no constitutional right to include vulgar racial epithets against prison officials in letters); *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008) (holding that "false and insubordinate remarks" in a letter to warden were not constitutionally protected).  Thus far, the Tenth Circuit has suggested that inmate speech is protected only in the context of making a formal attempt to report misconduct and/or file a grievance.  *See, e.g., Zarska v. Higgins*, 171 F. App'x 255, 259-60 (10th Cir. 2006); *Fogle v. Pierson*, 435 F.3d 1252, 1263-64 (10th Cir. 2006).

Plaintiff's comments to Defendants were vulgar, insulting, and threatening.  To Defendant Blanton he said, "You're a pussy[,] I'm going to sue the fuck out of you guys

for not giving me my medications." Undisputed Fact 8, *supra*. While being escorted out of B-pod he said, "fuck all you C/Os, you guys are a bunch of pussies, you will be working at Allsup's when I'm done, I want to sue this place so give me a reason." Undisputed fact 9, *supra*. While the surveillance video does not include sound, Plaintiff acknowledges that his other remarks were similarly "colorful" and consisted of threats to sue Defendants for not giving him his medications. *Doc. 34* at 5 ¶ 12. These are not the sort of formal complaints that constitute protected speech—they are not requests for medication or explanations of why Plaintiff needs medication and they were not made within the prison grievance system. They are primarily derogatory, inflammatory, and clearly intended to rankle Defendants.

To support his contention that the First Amendment protects the sort of comments made by Plaintiff to Defendants, Plaintiff cites numerous cases addressing offensive remarks directed at police officers. *See doc. 34* at 12-13. The cases are inapposite because they address speech outside of the prison context. As discussed above, speech within a prison is subject to more restrictions than would be permitted in most other settings. Although Plaintiff was a pretrial detainee at the time rather than an inmate, the same limitations apply. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979) ("A detainee simply does not possess the full range of freedoms of an unincarcerated individual."). While outside of a prison, offensive remarks are protected so long as they do not reach the level of fighting words, within a prison those same remarks may be

22

prohibited in the interests of order and discipline.  *See Gee*, 627 F.3d at 1187.  This Court concludes that Plaintiff's comments are not protected by the First Amendment. Moreover, even if such comments in these circumstances were considered to be protected speech, there is little doubt that the right is not clearly established as of now.

Finally, even assuming his remarks constitute protected speech under clearly established law, Plaintiff also fails to satisfy the third prong of the First Amendment retaliation test because he has presented no evidence that Defendants' actions were motivated by animus, let alone that his comments were the "but for" cause of their actions.  Plaintiff argues that his transfer to segregation and Defendants' alleged use of excessive force against him while escorting him to segregation were both in retaliation for his comments.  *Doc. 34* at 17.  Regarding the transfer to segregation, "[a]lthough Plaintiff alleged that he was transferred shortly after he threatened to sue [VCDC], this alone does not show retaliatory purpose."  *Cooper v. Ellsworth Corr. Work Facility*, 2 F.3d 1160, at *2 (10th Cir. 1993); *see also Boles v. Newth*, 479 F. App'x 836, 844 (10th Cir. 2012) (holding that temporal proximity of threat to sue to search of plaintiff's cell did not prove retaliation).  In fact, the record indicates that the transfer was motivated by Plaintiff.  According to the Incident Report, Plaintiff himself requested transfer to segregation: he told Defendant Blanton that "if he was going to be locked down he [sic] rather be housed in segregation."  *Doc. 29*, ex. C at 2.  Moreover, that same document indicates that Sergeant Ordonez, not Defendants, made the decision to transfer Plaintiff

to segregation.  *Id*. ("Officer Blanton advised me over the radio [that Plaintiff said he

would rather be in segregation if he was going to be locked down] and I advised officer

Blanton to cuff him up and escort inmate Molina to segregation.").  Thus, to the extent

that the transfer was at all retaliatory, it was retaliation by Sergeant Ordonez, not by

Defendants.

Plaintiff also alleges that the altercation in the hallway in which he was pushed

against the wall and taken to the floor was in retaliation for his comments.  Again,

Plaintiff has offered no evidence other than the temporal proximity between his

comments and the incident to support his contention of retaliation.  "Although

[Plaintiff] may have described [Defendants] in offensive terms shortly before [the

altercation], [the Tenth Circuit] ha[s] consistently held that temporal proximity between

protected activity and a challenged prison action does not, in itself, demonstrate the

causal nexus for a retaliation claim."  *Allmon v. Wiley*, 483 F. App'x 430, 433 (10th Cir.

2012).  When motive is a required element of a claim, once "the defendant-official has

made a properly supported motion, the plaintiff may not respond simply with general

attacks upon defendant's credibility, but rather must identify affirmative evidence from

which a jury could find that the plaintiff has carried his or her burden of proving the

pertinent motive."  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).  As noted above, the

video of the incident clearly shows Plaintiff physically resisting Defendants.  Thus,

absent any evidence to the contrary, no reasonable jury could find that Plaintiff's

comments were the "but for" cause of Defendants' conduct.  Because Plaintiff has failed to make out a First Amendment retaliation claim, Defendants are entitled to qualified immunity on Count III.

### C.  <u>Count IV – Battery under the New Mexico Tort Claims Act</u>

Plaintiff's remaining claim arises under the New Mexico Tort Claims Act.  *Doc. 1* ¶¶ 53-57.  "The district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which the district court has original jurisdiction."  28 U.S.C. § 1367(c)(3).  The Court's original jurisdiction in this case arose from the federal questions presented by Plaintiff's first three counts.  *See docs. 1 & 2.*  Having dismissed those counts, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim.  *See Bd. of County Comm'rs of Sweetwater County v. Georgia*, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002) (noting Tenth Circuit's "general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed").

### V.    CONCLUSION

Because Plaintiff has not demonstrated any of his alleged constitutional violations, Defendants are entitled to qualified immunity on Plaintiff's federal claims.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.  Defendants' Motion for Summary Judgment and Qualified Immunity, *doc.*

*29*, is GRANTED.  Counts I, II, and III of Plaintiff's Complaint are DISMISSED with

prejudice.  Count IV is DISMISSED without prejudice.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**